# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH PASSARELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 4147 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| NFI INTERACTIVE LOGISTICS, LLC, ) | |
| and NDC SYSTEMS, L.P., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Passarella ("Passarella") has sued Defendants NFI Interactive Logistics, LLC and NDC Systems, L.P. for damages arising from an incident when he was struck by a tractor and trailer operated by an employee of NFI Interactive Logistics, LLC in the parking area of a truck delivery terminal in Bolingbrook, Illinois controlled by NDC Systems, L.P. Passarella alleges that a result of this incident, he sustained severe orthopedic injuries requiring three surgeries and a lengthy rehabilitation. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Defendants have moved for summary judgment. For the reasons stated below, the summary judgment motion is granted as to Passarella's premises liability claim (Count I) and denied as to his negligent operation of a motor vehicle claim (Count II).

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. On March 17, 2010, the date of the occurrence, Passarella worked for Fleetwash, Inc. ("Fleetwash"). Passarella was a driver/account manager for Fleetwash. (Doc.100 at ¶ 9). In that capacity, Passarella washed truck fleets for companies. Id. As the driver, Passarella was in charge of the crew that was washing tractors and trailers at the time of the occurrence. Id. Passarella drove a straight truck with a rolling door on the back which was equipped with water tanks, soap tanks, and brighteners along with power washers. Id. at ¶ 10. To do his job, Passarella would attach 100 foot long hoses with power

washing guns at the end to the tanks to use to clean the tractors and trailers. Id. at ¶ 11. The noise at the back of the Fleetwash truck with the generator for the water tanks running would be slightly louder than a normal diesel engine running. Id. at ¶ 12.

Passarella had been to the NFI facility in Bolingbrook where the incident occurred on more than one occasion and fewer than five times prior to the date of the occurrence. Id. at ¶ 13. At the NFI facility, the spotter operator, as well as other drivers, would move trailers within the facility, and specifically, in the outside parking area west of the building. Id. at ¶ 53. On each prior occasion when Passarella had been at the Bolingbrook facility, he observed the spotter operator using the white spotter truck to hook up to trailers and back them into various dock doors, hook up to trailers at the dock doors, and pull them away to the far west side of the premises. Id. at ¶ 14. At his deposition, Passarella testified that he knew there could be other trucks as well as the spotter tractor moving trailers throughout the yard:

> Q. And you knew that there were many trailers and the spotter was there moving trailers throughout the yard, correct?
>
> A. Yes.
>
> Q. And you would agree that even though no one at Fleetwash told you to watch out for moving trailers, that it would be in your best interest to watch out for them, correct?
>
> A. I would agree.
>
> Q. That's common sense?
>
> A. Yes, sir.
>
> Q. Okay. And also based on your observation of the yard at NFI, you didn't need someone to tell you to watch out for trailers or listen for back-up alarms, correct?
>
> A. That's correct.
>
> Q. The back-up alarms would also be common sense if you heard one to get out of the way, correct?
>
> A. Yes, sir.

(Doc. 80-2; pp. 157:6-158:1).

At the time of the occurrence, Herbert Estrada was employed by Defendant NFI Interactive Logistics, LLC as a spotter operator and was the driver of the spotter truck involved in the incident with Passarella. (Doc. 100 at ¶ 35). In addition to Estrada, there were other drivers for other companies that would drop trailers off at the facility and operate their vehicles on the premises. Id. at ¶ 39. The spotter truck involved in the incident was a brand new vehicle equipped with flashing lights and a very loud beeping alarm that could be heard three to four blocks away. Id. at ¶¶ 36, 37, 54. Estrada estimated that the distance from the north edge to the south edge of the warehouse is 2 to 3 blocks or 400 feet. Estrada Dep. at 65:20-66:7. The alarm and lights were automatically activated when the spotter truck was put in reverse. (Doc. 100 at ¶¶ 37, 54). The back-up alarm was rated 107 decibels and the alarm would activate whenever the spotter truck's reverse gear was engaged. Id. at ¶¶ 21, 69. As the spotter truck was brand new, everything on the vehicle, including the back-up alarm, was working properly at the time of the occurrence. Id. at ¶ 38. The trailer involved in the incident was a regular fifty-three foot trailer. Id. at ¶ 64.

On the day of the occurrence, there were three people, including Passarella, on the Fleetwash crew washing trailers. Id at ¶ 17. There was also only one Fleetwash truck on the premises and only one spotter truck being operated. Id. at ¶¶ 15, 16. On the day of the occurrence and prior to the incident, Passarella saw the white spotter truck being operated on the premises. Id. at ¶ 18. Passarella had been at the Bolingbrook facility for more than two hours before the incident occurred. Id. at ¶ 20.

Passarella was washing the trailers and operating a rinse gun along the west side of the parking lot by the fence west of the building at the time of the incident. Id. at ¶ 24. Passarella says that he was approximately forty-five to fifty feet from the Fleetwash truck which was parked perpendicular to the trailers along the west fence and the backs of the trailers were facing north at the time of the incident. Id. at ¶ 25. At the time of the occurrence, there were two or three empty

parking spaces north of the area where Passarella was washing a group of four trailers. Id. at ¶ 26.

Estrada backed up the spotter tractor and trailer at one to two miles per hour prior to and at the time of the occurrence. Id. at ¶¶ 49, 62, 73. Immediately before the impact, the spotter tractor was hooked to a trailer which was moving to the west and was being backed into an open parking space along the west side of the premisses. Id. at ¶ 58. Passarella was hit by the fifty-three foot trailer attached to the spotter truck while it was being backed into a parking space approximately twenty (20) feet north of the northernmost of the four trailers that Passarella had been washing before the occurrence. Id. at ¶ 27. Passarella testified that at the time of the impact, he was pulling a hose and walking northbound but facing westbound, looking in the opposite direction from which the spotter and trailer were coming. Id. at ¶ 28. The rear end of the trailer made contact with Passarella as he was walking northbound and facing westbound. Id. at ¶ 29.

Passarella never saw the spotter truck or the trailer backing up and approaching him. Id. at ¶ 30. Passarella never heard the spotter truck and trailer approaching him before the impact. Id. at ¶ 32. Passarella admitted that the spotter truck had a back-up alarm that sounded when it moved in reverse, but testified that he did not have a recollection of hearing the spotter alarm sounding as the truck was coming towards him. Passarella Dep. at 152:9-12. When asked if there is a reason that he believes he did not hear the back-up alarm as the spotter and trailer were approaching him, Passarella testified: "[t]he longer you hear something on a regular basis, the less attention it becomes to you." Id. at 151:24-152:8. Passarella also testified that he did not need to be warned to watch out for moving trailers or to listen for back-up alarms at the NFI yard. Id. at 157:17-21.

On the day of the occurrence, another Fleetwash employee, Daniel Wehrli, was washing tractors and trailers with Passarella at the NFI Bolingbrook facility. (Doc. 100 at ¶ 50). The only people in the parking area west of the building at the time of the occurrence were Estrada and the three Fleetwash employees washing the trailers. Id. at ¶ 61. Wehrli had washed tractors and

trailers at the NFI Bolingbrook facility where the incident occurred on at least five prior occasions. Id. at ¶ 51. When at the Bolingbrook facility, Wehrli had seen tractors operating in the yard and hooking up and moving trailers. Id. at ¶ 52. He had also seen a white spotter tractor moving trailers around at the facility. Id. Prior to the incident, and throughout the day while Passarella and Wehrli were washing trailers, Wehrli had seen the spotter truck being operated the majority of the day. Id. at ¶ 56. On the day of the occurrence and before the incident, Passarella and Wehrli had already washed fifteen to twenty trailers. Id.

Just before the incident, Wehrli was between two trailers washing them. Id. at ¶ 57. When he came out between those vehicles, he looked to the north. Id. Wehrli testified that when he came out from between the vehicles, he did not hear the spotter's back-up alarm because the motors on the Fleetwash truck were very loud. Wehrli Dep. at 49:8-13. Wehrli estimated that he was two trailers or 20 feet away from the motors on the back of the Fleetwash truck at the time of impact. Id. at 49:14-17. Wehrli also testified that there were times during the day of the occurrence when he was in the yard but further away from the back of the Fleetwash truck, and he heard the alarm sounding on the spotter as it was backing up. Id. at 49:18-23.

There were open parking spaces to the south of the area where the trailer was to be parked, but Wehrli could not remember the exact number of open spaces. (Doc. 100 at ¶ 59). Wehrli testified that there were no more than four empty spaces. Wehrli Dep. at 57:22-58:12. Fifteen seconds prior to the impact, Wehrli saw Passarella walking northbound while facing in a northwesterly direction. (Doc. 100 at ¶¶ 60, 65). Wehrli and Passarella were about fifty feet apart during those fifteen seconds before the impact. Id. at ¶ 65. During that entire time, the spotter truck, hooked to the trailer, was backing in a westerly direction. Id. at ¶ 60. At the time of the incident, the Fleetwash truck was parked, facing southbound, 50 to 75 feet south of the place of incident. Id. at ¶ 66. The third Fleetwash employee was still between the vehicles washing them when the incident happened. Id. at ¶ 57.

During his deposition, Estrada testified to his version of events on the day of the occurrence. According to Estrada, he hooked the spotter truck to a trailer, maneuvered it next to a grassy patch in the western portion of the property, pulled the vehicle northbound alongside the grassy patch with the intention of parking the trailer in an open parking place along the western most edge of the parking lot. (Doc. 80 at ¶ 40). Before Estrada began to back the spotter truck and trailer, he brought it to a stop. Id. at ¶ 41. Before backing up the truck and trailer, Estrada saw Passarella washing trucks approximately fifteen (15) places south of where he intended to park the semi-trailer. Id. at ¶ 42. After stopping and before beginning to back up, Estrada looked out of his window and in his mirrors and saw no one walking toward his vehicle. At that point, Passarella and his co-workers were still washing the trailers in the same area Estrada had previously seen them, south of where he intended to park the semi-trailer. Id. at 43. Estrada testified that the parking lanes for the trailers are 9 or 10 feet wide and the trailer is 8-feet wide. (Doc. 100 at ¶ 44). As Estrada backed the spotter truck from north to south with the trailer moving east to west, the trailer behind his spotter truck created a blind spot for him behind and to the left of his vehicle. (Doc. 80 at ¶ 45). As he was backing into the parking place, Estrada was hanging out of his driver's side window and looking as he backed up. At this point, he saw Passarella on the ground and rolling north of his vehicle. Id. at ¶ 46. Estrada testified that as soon as he saw Passarella rolling on the ground, he immediately applied the brakes and stopped his vehicle. Id. at ¶ 47.[1]

---

[1] Passarella disputes Estrada's statement that he stopped the vehicle as soon as he saw Passarella on the ground. Passarella points to Wehrli's testimony that Estrada did not stop his vehicle until after he struck Passarella with the trailer, Wehrli hit his hand on the trailer, and Estrada then saw Wehrli in his mirror. Wehrli Dep. at 58:20-59:1.

Passarella purports to partially dispute Estrada's version of events by relying on Wehrli's testimony that Defendants' vehicle was backing directly westbound and was constantly moving westbound for at least 15 seconds prior to the collision with Passarella. (Doc. 100 at ¶¶ at 40-43, 45, 46). Passarella disputes Estrada's claim that he saw Passarella washing trucks 15 parking places south of where he intended to park the trailer as Wehrli testified that Passarella was 15 to 20 feet east of the trailers parked along the westernmost portion of the property and was between 35 and 65 feet from the Fleetwash truck as Estrada was backing his truck. Id. at ¶¶ 42, 43. Because Wehrli testified that he only saw Passarella for 15 seconds immediately before the impact, it is not clear whether a real dispute exists as to Estrada's version of events. Wehrli Dep. at 63. Even if the Estrada and Wehrli accounts vary as to certain details, there is no factual dispute as to certain core facts which are that the spotter truck and trailer were moving at no faster than 2 miles per hour with lights flashing and back-up alarm operating at the time of the occurrence.

## **DISCUSSION**

Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists that precludes summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 701 (7th Cir. 2015). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Passarella's Second Amended Complaint alleges negligence based on a premises liability theory (Count I) and negligence in the operation of a motor vehicle (Count II). Jurisdiction in this case is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). The parties agree that Illinois state law applies. Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2001) (stating "[a] federal court sitting in diversity jurisdiction must apply the substantive law of the state

in which it sits."). "To establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." Swearingen v. Momentive Speciality Chemicals, Inc., 662 F.3d 969, 972 (7th Cir. 2011). "Whether a duty exists in a particular case is a question of law to be determined by the court." Ward v. K Mart Corp., 554 N.E.2d 223, 226 (Ill. S. Ct. 1990). "In determining whether a duty exists, four factors are typically considered: '(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; (4) the consequences of placing that burden on the defendant.'" Garest v. Booth, 12 N.E.3d 661, 672 (Ill. App. 2014); Ward, 554 N.E.2d at 226-27.

**A.     Count I - Premises Liability**

As to his premises liability claim, Passarella alleges that Defendants had responsibility to warn of any dangers associated with the movement of vehicles on and about the premises. Defendants argue that they owed no duty to Passarella because the risk of being struck by a slowly moving truck and trailer with flashing lights and a loud backup alarm was open and obvious.

Passarella was an invitee at Defendants' property on the date of the occurrence. "As a general rule, a landowner owes a business invitee 'the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe for use.'" Swearingen, 662 F.3d at 972; Reid v. Kohl's Dept. Stores, Inc., 545 F.3d 479, 481 (7th Cir. 2008). "With respect to conditions on land, generally there is no duty of care owed by the landowner regarding open and obvious conditions because the landowner 'could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition.'" Ballog v. City of Chicago, 908 N.E.2d 690, 695 (Ill. App. 2012) (quoting Ward v. K Mart Corp., 554 N.E.2d 223, 230 (Ill. S.Ct. 1990)). "Under the open-and-obvious doctrine, a landowner is not liable for physical harm caused to invitees by any condition on the land whose danger is known or obvious to them, unless the landowner should anticipate the harm despite such knowledge or obviousness." Swearingen, 662

F.3d at 972; Buchaklian v. Lake County Family YMCA, 732 N.E.2d 596, 600 (Ill. App. 2000) (noting "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.").

A dangerous condition is open and obvious when "'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" Menough v. Woodfield Gardens, 694 N.E.2d 1038, 1042 (Ill. App. 1998) (quoting Deibert v. Bauer Brothers Construction Co., 566 N.E.2d 239, 241 (Ill. S.Ct. 1990)). Generally, "[w]here there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law." Choate v. Ind. Harbor Belt R.R., 980 N.E.2d 58, 67 (Ill. S.Ct. 2012). "However, where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual." Wilfong v. L.J. Dodd Constr., 930 N.E.2d 511, 520 (Ill. App. Ct. 2010).[2]

Here, there is no genuine issue of fact concerning the open and obvious danger of the moving spotter truck and trailer. Passarella contends that there is a significant dispute as to the physical nature of the tractor with a 53-foot trailer moving across the yard, but he fails to identify what is disputed about the danger presented by the moving truck and trailer. The physical nature of the danger–the moving truck and trailer–is uncontested. The moving truck and trailer were clearly visible, not hidden or concealed. The spotter truck was equipped with flashing lights and a loud beeping alarm that could be heard three to four blocks away, both of which were automatically activated when the vehicle was put in reverse and both were working at the time of the occurrence. The truck and trailer were being slowly backed up at a speed of 1 to 2 miles per hour. Passarella has failed to identify a single dispute about the physical nature of the condition

---

[2] There are two exceptions to the open and obvious doctrine–the deliberate encounter exception and the distraction exception. Because Passarella does not argue that either exception applies in the present case, the Court's duty analysis considers only whether the open and obvious rule applies.

that caused his injuries. Passarella also points to no aspect of the premises that prevented him from seeing or hearing the slowly moving truck and trailer coming toward him. Thus, no reasonable trier of fact could conclude other than that the moving truck and trailer posed an open and obvious danger to Passarella. This is particularly so where Passarella was familiar with the spotter truck moving trailers around the yard and into parking places and knew to watch out for moving trailers and to listen for back-up alarms.

Although Passarella testified that he did not see the truck and trailer approaching him and did not recall hearing the back-up alarm sounding as the truck and trailer were backing towards him, this does not establish that the danger of the backing truck and trailer was not open and obvious. "Whether a condition is open and obvious depends on the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." Prostran v. City of Chicago, 811 N.E.2d 364, 368 (Ill. App. 2004); Lederman v. Pacific Industries, Inc., 119 F.3d 551, 554 (7th Cir. 1997) (holding under Illinois law, determining whether a particular danger is open and obvious is an objective inquiry). It is undisputed that spotter truck was equipped with operating flashing lights and a loud alarm which sounded as it was slowly backing up. (Doc.110 at ¶¶ 37, 38, 49, 54, 62, 73). Given these undisputed facts, the Court concludes that a reasonable person in Passarella's position, exercising ordinary perception, intelligence, and judgment, would recognize the risk involved in walking into the path of a backing truck and trailer.[3]

---

[3] Defendants submit the expert opinion of Michael Dilich, a mechanical engineer and certified incident reconstuctionist who specializes in heavy vehicle major loss accidents including tractor trailers. Dilich opines that the back-up alarm "was clearly audible even when one is standing within 20 to 30 feet of the diesel engine and more than 100 feet away from the spotter truck." (Doc. 100 at ¶ 77). Dilich further opines that "[e]ven with the Fleetwash vehicle running, the back-up alarm was clearly audible to anyone in the vicinity of the spotter truck." Id. at ¶ 78. Passarella argues that these opinions are unreliable because Dilich took no scientific or calculable measurements of decibel level in relation to surrounding noise during his analysis. (Doc. 100 at ¶¶ 77, 78). Defendants failed to address Passarella's challenge to the reliability of these opinions in their reply brief and therefore, fail to satisfy their burden of demonstrating the reliability of Dilich's opinions. Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 705 (7th Cir. 2009). The Court declines to consider these opinions in making its decision. In the end, it does not matter because Passarella did not testify that the back-

In order to avoid application of the open and obvious doctrine to Count I, Passarella argues that the moving truck and trailer that struck and injured him was not a "condition" on the property. This does not negate application of the open and obvious doctrine. Passarella's Count I sounds in premises liability. Count I alleges that Passarella was an invitee and that Defendants had a duty to exercise ordinary care in the ownership, operation, management, maintenance, repair, and control of the premises. (Doc. 93 at ¶ 13). Passarella further alleges that Defendants allowed dangerous conditions to exist on the premises. Id. at ¶ 14. The Illinois Premises Liability Act expressly applies to "acts or omissions" of persons on the property, not solely to the physical condition of the property. Under Illinois law, an owner or occupier of premises owes invitees and licensees a duty of "reasonable care under the circumstances regarding the state of the premises or *acts done* or omitted on" the property. 740 ILCS 130/2. Thus, the clear language of the Premises Liability Act encompasses activities and operations conducted on the property. Passarella fails to cite any case holding that the open and obvious doctrine would not apply to a premises liability claim based on activities on the premises. Because Passarella is pursing a negligence claim against Defendants based on premises liability in Count I, the open and obvious doctrine is applicable.

Passarella also contends that a mobile condition cannot be open and obvious. Passarella cites no case in support of this contention. Application of the open and obvious doctrine is not limited to static objects or conditions in Illinois. For example, numerous Illinois cases have held that the danger posed by a moving train is open and obvious. Escobar v. Chicago Transit Authority, 2014 WL 4674604, at *8 (Ill. App. Sept. 19, 2014) (stating "a moving train is an open and obvious danger."); McDonald v. Northeast Illinois Regional Commuter Railroad Corp., 988 N.E.2d 1078,

---

up alarm was not loud enough or that he did not hear the back-up alarm due to the Fleetwash vehicle running. Rather, the only explanation given by Passarella for why he cannot recall hearing the back-up alarm is that "[t]he longer you hearing something on a regular basis, the less attention it becomes to you." Passarella Dep. at 151:24-152:8.

1085 (concluding that the "danger posed by the oncoming train in this case was open and obvious and that the decedent should have realized the risk of trying to hurry across the tracks before it arrived at the station."); Choate v. Indiana Harbor Belt Railroad Co., 980 N.E.2d 58, 68 (Ill. S.Ct. 2012) (recognizing "as a matter of law that a moving train is an obvious danger that any child allowed at large should realize the risk of coming within the area made dangerous by it."); Zokhrabov v. Jeung-Hee Park, 963 N.E.2d 1035, 1038-39 (Ill. App. 2011) (stating "[i]t is axiomatic that pedestrians on or near active train tracks are at great risk of suffering severe, even fatal injuries. This court recently held that the personal danger posed by stepping in front of a moving train is an open and obvious danger.); Park v. Northeast Illinois Regional Commuter Railroad Corp., 960 N.E.2d 764, 770 (Ill. App. 2011) (holding that the "danger of steeping in front of a moving train is open and obvious regardless of the kind of train it is.").[4]

Similarly, the danger posed by walking behind a moving truck and trailer is an open and obvious danger. "The law generally assumes that persons who encounter obvious, inherently dangerous conditions will take care to avoid the danger." Zokhrabov, 963 N.E.2d at 1038-39. The record indicates that the spotter truck was equipped with flashing lights and a very loud back-up alarm (107 decibels). It is undisputed that the lights were flashing and the alarm was sounding as the trailer was being slowly (one to two miles per hour) backed into a parking space by the spotter truck. Defendants could have reasonably expected Passarella to appreciate the risk associated with walking into the path of a backing spotter truck and trailer. Passarella failed to exercise due care for his own safety when walking directly into the path of a moving truck and trailer.

Passarella's reliance on Defendants' internal objectives and standard operating procedures as identified in their Powered Industrial Truck Crash Occurrence ("PITCO") is also unavailing.

---

[4] Passarella's attempt to distinguish these train cases on the ground that the path of the truck and trailer was not fixed is unpersuasive. In none of the train cases did the courts indicate that their open and obvious finding was based on the path of the train being fixed.

(Doc. 101 at 5, 6, 12, 13, 15). The Illinois Supreme Court has held that "[w]hether a legal duty exists is a question of law and is determined by reference to whether the parties stood in such a relationship to each other that *the law* imposes an obligation on one to act for the protection of the other. Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is the law which, in the end, must say what it legally required." Rhodes v. Illinois Cent. Gulf R.R., 665 N.E.2d 1260, 1272 (Ill. S.Ct. 1996) (citing cases) (emphasis in original). Because Defendants' internal guidelines do not create a legal duty, any alleged violation of such guidelines does not constitute negligence.

Because the risk of walking behind a clearly visible, audible, and slowly moving truck and trailer is open and obvious and no exception to the open and obvious doctrine applies, the first two factors of the duty analysis weight in favor of Defendants. Bruns, 21 N.E.3d at 690; Sollami v. Eaton, 777 N.E.2d 215, 224 (Ill. S.Ct. 2002) (recognizing that the "law generally considers the likelihood of injury slight when the condition in issue is open and obvious, because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks."). It was neither likely nor reasonably foreseeable that Passarella would fail to heed the warning of the back-up alarm and flashing lights and walk into the path of the clearly visible moving truck and trailer. There is no evidence on the remaining factors of the duty test–the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the Defendants. Even if the burden of guarding against injury and the consequences of placing the burden on the Defendants is slight, placing such a burden on Defendants is unjustified given the open and obvious nature of the danger, the flashing lights and loud backup alarm warnings, and the fact that Passarella could have easily avoided the injury by taking care to look in the direction he was walking in a truck terminal with moving vehicles and listening for the back-up alarm. Sollami, 772 N.E.2d at 224 (holding imposing burden on defendant was unjustified where the risks of trampoline usage are open and obvious). The final two factors do not favor imposing a duty on

Defendants to take additional steps besides the truck's visual and audible warnings to warn pedestrians about moving trucks and trailers in the active truck terminal. Accordingly, the Court concludes that Defendants owed no duty to protect or warn Passarella of the moving spotter truck and trailer.

The Court need not address the issues of proximate cause and contributory negligence by Passarella as Passarella failed to raise a genuine issue of material fact as to whether Defendants owed him a duty, Ballog v. City of Chicago, 980 N.E.2d 690, 695 (Ill. App. 2012) (noting "[a]bsent a legal duty of care owed to the plaintiff, the defendant cannot be found negligent.").[5]

**B.      Count II - Negligent Operation of a Motor Vehicle**

In Count II of his Second Amended Complaint, Passarella alleges that Estrada negligently operated the spotter truck and trailer by operating the vehicle without keeping a proper and sufficient lookout, failing to safeguard a pedestrian, proceeding at a speed which was greater than reasonable and proper with regard to traffic conditions, failing to decrease speed so as to avoid colliding with another person, backing the vehicle when such a movement could not be made safely, failing to equip said vehicle with adequate brakes, failing to give audible warning with the horn when such warning was reasonably necessary to insure safety, failing to ensure that the operator of the vehicle was physically qualified to operate said vehicle, and allowing an untrained and unevaluated operator to operate the vehicle in violation of OSHA and/or the Illinois Vehicle Code. Defendants' summary judgment motion did not directly address Count II of Passarella's

---

[5] Passarella also argues that Defendants "failed to follow the OSHA mandates and train Herbert Estrada" and that the purported failures caused the contact between Passarella and Defendants' vehicle. (Doc. 101 at 13). The Court has held that Defendants did not have a duty to protect Passarella from the open and obvious danger of walking into the path of a backing truck and trailer. Defendants' alleged OSHA violation does not create a duty where no other duty existed. Miller v. Archer-Daniels-Midland Co., 634 N.E.2d 1108, 1113 (Ill. App. 1994). However, evidence of Defendants' alleged failure to comply with OSHA Standard 1910.178 by properly training Estrada may be relevant to Passarella's claim for negligent operation of the vehicle. Id. (stating violations of OSHA "may constitute evidence of negligence but do not create a statutory duty.").

Second Amended Complaint because Passarella did not add Count II to his complaint until three months after Defendants moved for summary judgment. Instead, Defendants argue in their reply brief that they are entitled to summary judgment on Count II because Passarella's "failure to point to any evidence indicating that Defendants' conduct was the legal cause of his injuries applies with equal force to both counts of Plaintiff's Second Amended Complaint." (Doc. 103 at 13).[6]

As Defendants do not address any issue besides proximate causation with regard to Count II, for purposes of this motion, the Court accepts Passarella's allegations that Defendants committed the alleged acts and/or omissions in violation of OSHA and the Illinois Vehicle Code. The Court also infers that OSHA and the Illinois Vehicle Code are statutes designed to protect human life. Kalata v. Anheuser-Busch Cos., 581 N.E.2d 656, 661 (Ill. S.Ct. 1991). The Illinois Supreme Court has explained:

> A violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence. A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered. The violation does not constitute negligence *per se*, however, and therefore the defendant may prevail by showing that he acted reasonably under the circumstances.

Id. What is the proximate cause of an injury is ordinarily a question of fact to be determined by the jury from a consideration of all of the evidence. Id. at 662. In this case, the briefing is not sufficient to determine whether Defendants' alleged violations of OHSA and the Illinois Vehicle Code were the proximate cause of Passarella being struck by the spotter truck and trailer. Because the Court cannot conclude on this record that no reasonable jury could find that alleged violations of OSHA

---

[6] Passarella argues that the open and obvious doctrine does not bar his claim based on negligent operation of a motor vehicle. The Court agrees with Passarella that the open and obvious doctrine applies only to premises liability claims, not claims of active negligence. Petrouski v. Brandenburg Industrial Service Co., 2012 WL 2402634, at *10 (Ill. App. March 22, 2012); Chu v. Bowers, 656 N.E.2d 436, 440 (Ill. App. 1995) (concluding that the open and obvious danger rule applies only in premises liability cases).

and the Illinois Vehicle Code were the proximate cause of Passarella's injury, Defendants are not entitled to judgment as a matter of law on Count II.

## **CONCLUSION**

For the reasons stated herein, Defendants' Motion for Summary Judgment [79] is granted in part and denied in part. This case is set for a status hearing on 7/30/2015 at 9:30 a.m.

E N T E R:

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: July 9, 2015**