## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH PASSARELLA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 4147 |
| | ) | |
| v. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| NFI INTERACTIVE LOGISTICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Passarella filed this lawsuit seeking recovery for injuries he suffered on March 17, 2010, when he was struck by a commercial motor vehicle being operated by an employee of Defendant in the parking lot of a distribution center in Bolingbrook, Illinois. The matter is set for a jury trial to begin on November 14, 2016.

Plaintiff filed a consolidated document containing seventeen motions *in limine* (doc. # 147), and Defendant filed fifteen separately docketed motions *in limine* (doc. #s 132-146). Plaintiff's Motions *in Limine* Nos. 2-8, 10, and 13-17 are granted without opposition, and Defendant's Motions *in Limine* Nos. 5-8, and 12 are granted without opposition. Our rulings on Plaintiff's Motions *in Limine* Nos. 1, 9, 11, and 12 and Defendant's Motions *in Limine* Nos. 1-4, 9-11, and 13-15 are set forth below.

### I. Plaintiff's Motions *in Limine*

#### A.

**Plaintiff's Motion *in Limine* No. 1.** Plaintiff seeks to bar any comment, argument or evidence that any verdict awarded for noneconomic damages would provide a "stream of income" or "how Plaintiff could invest" or "what Plaintiff could do" with the money awarded or

that Plaintiff could live on accrued interest. Plaintiff argues that these types of comments would improperly suggest that elements of noneconomic damage should be reduced to present case value. Under Illinois law, damages for pain and suffering, disability, and disfigurement are not to be discounted to present case value. *Schaffner v. Chicago & Northwestern*, 541 N.E.2d 643, 652 (Ill. S.Ct. 1989). In *Schaffner*, the plaintiff sought to preclude any argument that would have suggested to the jury that they should consider, in determining damages, any income that could be obtained by investment of the sums of future damages. The Illinois Supreme Court held that allowing any argument that noneconomic damages awarded to the plaintiff could be invested to produce a stream of income would have been error. *Id.* at 652-53.

In its response, Defendant says that it does not seek to argue to the jury that noneconomic damages should be reduced to present value. Instead, Defendant objects that Plaintiff is essentially seeking to bar Defendant from, in any way, commenting or arguing that the amount of damages he intends to request is excessive or disproportional to the injuries he actually suffered. Defendant points out that compensatory damages are intended to make Plaintiff whole, but not to enable him to make a profit or windfall from the transaction. Defendant argues that if Plaintiff's request for damages at trial is such that he would never have to work again due to the time value of that money, it should be able to argue that Plaintiff's request is excessive and not fair and reasonable.

Given the established Illinois law that noneconomic damages should not be reduced to present value, we grant Plaintiff's Motion *in Limine* No. 1. This ruling does not bar Defendant from arguing that Plaintiff's request for damages is excessive or disproportional to the injuries and harm suffered by Plaintiff; however, Defendant may not make that argument by making any reference to the time value of money.

**B.**

**Plaintiff's Motion** *in Limine* **No. 9.** Plaintiff seeks to bar any comment, argument, evidence or reference that Plaintiff is required to prove (or that the Plaintiff himself has to testify to) a certain specific dollar amount in order to be compensated for noneconomic damages, pain and suffering, disability, loss of normal life and any other noneconomic damages. Plaintiff contends that he need only present evidence from which the jury can determine the amount to be awarded for noneconomic damages that would appropriately compensate him for any such injuries. Defendant objects to this motion *in limine* to the extent that it seeks to bar Defendant from arguing against any dollar amount Plaintiff may choose to place on any aspect of his damages, or that Plaintiff has failed to introduce evidence justifying a particular amount of damages.

Defendant's objection is nonresponsive to Plaintiff's actual argument. Defendant says that it should be able to argue against any particular dollar amount Plaintiff places on his damages, but Plaintiff is arguing that he need not testify to a specific dollar amount to be compensated for noneconomic damages. Accordingly, we grant Plaintiff's Motion *in Limine* No. 9, to the extent that it seeks a ruling that Plaintiff is not required to request or testify to a certain specific dollar amount for noneconomic damages. Our ruling does not preclude Defendant from arguing that Plaintiff has not offered evidence to support his requested damage award, offering its own evidence indicating a different amount of damages, or arguing that the damages amount suggested by Plaintiff is not necessary to compensate him.

**C.**

**Plaintiff's Motion** *in Limine* **No. 11**. Plaintiff seeks to bar any comment, argument or evidence regarding Plaintiff's motives for filing and prosecuting this action. Defendant objects,

3

claiming that the evidence at trial will show that (1) the shoulder and elbow injuries Plaintiff claims to have suffered as a result of the occurrence at issue pre-existed that occurrence and (2) that while Plaintiff claims he was unable to work as a result of the claimed injuries, the real reason he stopped working shortly after the occurrence was because of a disagreement with his employer. Defendant argues that one can reasonably infer from this evidence that Plaintiff's motivation in bringing this suit was to obtain money and/or effectively free medical treatment for pre-existing ailments.

We defer a decision as to Plaintiff's Motion *in Limine* No. 11 until trial. Defendant cannot raise the issue of the Plaintiff's motives in filing and prosecuting this action during voir dire or opening statements. If Defendant intends later to offer argument that Plaintiff's motivation in bringing this suit was to obtain money and/or free medical treatment for pre-existing ailments, then defense counsel must first approach the bench for a ruling and demonstrate how that argument is supported by the evidence.

**D.**

**Plaintiff's Motion *in Limine* No. 12**. Plaintiff's Motion *in Limine* No. 12 seeks to bar any comment, argument, evidence, or mention that some or all of the Plaintiff's medical expenses have been paid by a third party including recovery from the Plaintiff's own insurance, the government, Medicaid, Medicare, social security, worker's compensation, or any other source. Plaintiff's motion is based on the collateral source rule, which under Illinois law is both a rule of evidence and a substantive rule of damages. *Klesowitch v. Smith*, 52 N.E.3d 365, 375 (Ill.App. March 17, 2016). As a rule of evidence, the rule prevents the jury from learning anything about collateral income. *Id.* "As a substantive rule of damages, the rule bars a defendant

from reducing the plaintiff's compensatory award by the amount the plaintiff received from the collateral source." *Id. (quoting Wills v. Foster*, 892 N.E.2d 1018, 1023 (Ill. S.Ct. 2008)).

Part 1 of Plaintiff's Motion *in Limine* No. 12 seeks to bar any comment, argument, or evidence that some or all of Plaintiff's medical expenses have been paid by a third party such as insurance, government aid programs, or workers' compensation. That part of the motion is unopposed, and we grant it.

Turning to Part 2 of Plaintiff's Motion *in Limine* No. 12, Defendant argues that under the circumstances of this case, Plaintiff may not seek damages for the full amounts of his medical bills that have not been paid in full because he has failed to properly disclose any witness who will be able to offer the requisite expert testimony that the full amounts of those bills are fair and reasonable. *See* Defendant's Motions *in Limine* Nos. 1, 14. Again, the parties talk past each other in the briefing of the motion. We do not view Defendant's argument as one that violates the collateral source rule. Defendant is not arguing that Plaintiff is barred from recovering for bills because they were paid by a third party, but rather, because Plaintiff has identified no witness or other competent evidence that certain bills were paid at all or in full, or that the charges on the bills not paid in full were reasonable and necessary. Thus, we deny Part 2 of Plaintiff's Motion *in Limine* No. 12; however, that ruling does not permit Defendant to offer evidence or argument about sources of payment for Plaintiff's medical bills. We discuss more fully in connection with Defendant's Motion *in Limine* Nos. 1 and 14 what evidence may—and may not—be offered in connection with Plaintiff's medical bills.

## II. Defendant's Motions *in Limine*

### A.

**Defendant's Motion *in Limine* No. 1.** Pursuant to Federal Rules of Civil Procedure 26(a) and 37(c)(1), Defendant moves to bar Plaintiff from calling any witness whose identity has not been properly disclosed from testifying at trial. In his Rule 26(a) disclosures, Plaintiff listed, but did not name, the "Keeper of Records" and the "Patient Account Representative" of various health care providers from which he has received medical or physical therapy treatment that he claims was necessitated by the accident in this case. Plaintiff states that he expects to elicit "factual and opinion testimony" from each of these unnamed witnesses regarding the accuracy and genuineness of the health care providers' records and bills. Plaintiff further states that "Patient Account Representatives" will testify that services provided by their respective principals were "reasonable and necessary treatment for injuries and medical conditions caused by the subject incident." Plaintiff also expects these unnamed witnesses to testify that their respective principals' bills for services provided to Plaintiff represent "fair and reasonable charges for services performed." Defendant contends that Plaintiff should be barred from calling as witnesses the "Keeper of Records" and "Patient Account Representatives," because these several listings did not sufficiently identify the witnesses as required by Rule 26(a).

In his response brief, Plaintiff objects to Defendant's Motion *in Limine* No. 1, stating only that "[b]y way of separate motion, Plaintiff will be seeking leave to provide a supplemental witness disclosure which would obviate Defendant's motion" (doc. # 165 at 1). Plaintiff offers no substantive response to Defendant's argument that generically listing the "Keeper of Records" and the "Patient Account Representatives" of various health care providers fails to satisfy his initial disclosure obligations under Rule 26(a).

We agree with Defendant that the mere listing of generic categories of unnamed individuals is insufficient to satisfy Rule 26(a)(1)(A)(i) and (a)(2)(A). Rule 26(a)(1)(A)(i) expressly requires disclosure of an individual's "name and, if known, the address and telephone number of each individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i); *see also Rogers v. Bank of American, N.A.*, 2014 WL 4681031, at *4-6 (D. Kan. Sept. 19, 2014) (holding initial disclosures that generically listed "corporate representative" or "records custodian" insufficient to comply with Rule 26(a)(1)(A)(i)). Rule 26(a)(2)(A) requires disclosure of "the identity of any witness" a party may use at trial to present expert testimony. Fed. R. Civ. P. 26(a)(2)(A); *see also Walton v. Best Buy Co. Inc.*, 2010 WL 1494612, at *5 (E.D. Mich. April 14, 2010) (holding "Plaintiff's listing of only the categories for which she may use expert witnesses at trial does not satisfy Rule 26(a)(2)(A)."). Rule 26(e)(1) requires timely supplementation or correction of Rule 26(a) disclosures if they are incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). And, the scheduling order entered on May 3, 2016 clearly stated that the parties' witness list must state the names and addresses of witnesses (doc. #124: 05/03/06 Order at 1). Yet, Plaintiff failed to provide that information for the various Keepers of Records and Patient Account Representatives.

To date, despite the representation in his response to the motion filed on October 3, 2016, Plaintiff has not filed a motion to supplement his Rule 26(a) disclosures to name and identify the "Keepers of Records" and "Patient Account Representatives." We would expect that by now, less than one month before trial, Plaintiff would have filed his motion if he intended to seek leave of court to supplement his witness disclosure. And, we are skeptical that Plaintiff could show good cause to file a supplement at this late date, when he failed to identify the witnesses as recently as the filing of the final pretrial order on October 12, 2016.

When a party fails to properly identify a witness, the party is not allowed to use that witness at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Plaintiff makes no argument that his failure was justified or harmless. We cannot envision a legitimate justification for the non-disclosure, and it surely is not harmless to seek to call eight witnesses who were never before identified and whom Defendant did not have any opportunity to depose. Moreover, this is not a case of sandbagging; Defendant was under no obligation to save Plaintiff from himself by asking Plaintiff to specifically identify the Keepers of Records and Patient Account Representatives. Therefore, we grant Defendant's Motion *in Limine* No. 1.

**B.**

**Defendant's Motion *in Limine* No. 2**. Defendant moves to bar Plaintiff from testifying or presenting any evidence that he has undergone any medical or physical therapy since September 9, 2011 which is in any way related to the injuries claimed herein, because Plaintiff has provided no such information in discovery. Pursuant to Federal Rules of Civil Procedure 26(e) and 37(c)(1), Defendant argues that if Plaintiff has undergone any medical or physical therapy treatment since September 9, 2011 that he claims to have been necessitated by his alleged injuries from the occurrence, he should not be allowed to testify or introduce evidence regarding that treatment because his failure to timely supplement his disclosures with such information has unfairly prejudiced Defendant's ability to adequately prepare for trial. As evidence of that prejudice, Defendant points out that it did not retain a medical expert to evaluate whether any treatment occurring after September 9, 2011 was necessary or related to Plaintiff's alleged injuries from the occurrence.

Plaintiff does not object to Defendant's Motion *in limine* No. 2 to the extent that it relates only to actual medical care and treatment rendered after September 9, 2011. Plaintiff states that

he objects to the motion only if it seeks to prevent testimony regarding the permanent nature of certain aspects of his injuries.

We find Plaintiff's objection regarding permanency nonresponsive to Defendant's argument. Defendant's second motion *in limine* does not challenge the admission of evidence regarding permanency of injury. Accordingly, Defendant's Motion *in Limine* No. 2 is granted. Plaintiff may not offer any evidence indicating that he has undergone medical or physical therapy treatment since September 9, 2011 that was related to injuries he claims to have suffered in the accident.

## C.

**Defendant's Motion *in Limine* No. 3**. Defendant moves to bar Plaintiff from presenting any evidence or argument relating to any internal rules, guidelines, operating procedures, or requirements of Defendant, including, but not limited to (a) Defendant's employee manual and driver manuals and (b) the so-called "PITCO" documents produced by Defendant in discovery, which discuss training, safety procedures and reporting. Plaintiff claims that Defendant's employee who was involved in the accident failed to follow Defendant's own rules or internal guidelines by not getting out of the vehicle and visually inspecting the area behind it before beginning to back up the vehicle into a parking space. Defendant argues that Illinois case law holds that a party's internal guidelines do not create a duty and, therefore, the violation of any such guidelines does not constitute negligence. Defendant also points out that in the opinion ruling on summary judgment, Judge Martin ruled that "[b]ecause Defendants' internal guidelines do not create a legal duty, any alleged violation of such guidelines does not constitute negligence" (doc. # 105 at 13).

In his response, Plaintiff alleges that Defendant's employee violated several internal protocols, which were the proximate cause of the incident and Plaintiff's injuries. Plaintiff concedes that a violation of an internal rule or guideline does not constitute proof of negligence *per se*. Instead, Plaintiff relies principally on *Hudson v. City of Chicago*, 881 N.E.2d 430 (Ill. App. 2007), to argue that Illinois law does allow presentation of a violation of internal rules and procedures as evidence of negligence.

Illinois cases recognize that it cannot reasonably be inferred from a failure to follow internal rules or guidelines that a defendant breached his duty of care. Illinois law holds that "the violation of self-imposed rules or internal guidelines . . . does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct." *Morton v. City of Chicago*, 676 N.E.2d 985, 992 (Ill. App. 1997). We recognize that the *Hudson* case, cited by Plaintiff, found that a violation of a police department general order could be considered by the jury, along with other evidence, in reaching a determination of willful and wanton conduct. *Hudson*, 881 N.E.2d at 456-57. However, the *Hudson* court relied on an excerpt from the *Morton* case that did not accurately represent the *Morton* court's holding. As the Illinois Appellate Court recently explained in *Yarborough v. City of Springfield*, 2016 WL 2854327 (May 13, 2016), the "*Hudson* court based its reasoning on a cleverly edited quote from *Morton* in finding" a "'violation of self-imposed rules or internal guidelines * * * does not * * * alone constitute evidence of negligence, or beyond that wilful [sic] and wanton conduct.'" *Id.* at *11. In fact, the *Morton* court held, "Indeed, the violation of self-imposed rules or internal guidelines, such as [the rule at issue], does not *normally impose a legal duty, let* alone constitute evidence of negligence, or beyond that, wilful [sic] and wanton conduct." *Morton*, 676 N.E.2d at 992. (emphasis added). Like the court in *Yarborough*, we find the *Hudson* court's analysis

unpersuasive because it does not cite any authority supporting its position that internal rules can constitute some evidence of negligence. *Yarborough*, 2016 WL 2854327, at *11.

Even if Defendant's internal rules or guidelines were relevant evidence of negligence, we would exclude them pursuant to Federal Rule of Evidence 403 because the marginal relevance they may possess is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Fed. R. Evid. 403. In *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006), plaintiffs alleged use of excessive force by a police officer and sought to introduce internal police department rules concerning the appropriate use of force during trial. With regard to plaintiffs' state law wrongful death claim, which appeared to impose liability under a negligence standard, the Seventh Circuit affirmed the district court's exclusion of evidence regarding internal police department rules concerning the use of force. The *Thompson* court "assume[d], without deciding, that the CPD's General Orders were relevant to [Plaintiffs'] wrongful death claim," but nevertheless "conclude[d] that they were properly excluded under Rule 403." *Id.* at 456.

The Seventh Circuit noted that "[a] problem with allowing the CPD's General Orders into evidence is that those orders do not create a duty to the public at large." *Id.* at 457. Quoting *Morton*, the Seventh Circuit acknowledged that "violation of a self-imposed rules or internal guidelines . . . does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, wilful [sic] and wanton conduct." *Id.* Finally, the Seventh Circuit rejected a limiting instruction, ruling "[a]ny limiting instruction explaining to the jury that, although General Orders do not create a duty on the part of an officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding . . . would have led to unnecessary and detrimental jury confusion." *Id.* The *Thompson* court concluded that "evidence about the

11

specifics of the CPD's General Orders might very well have contributed to unfair prejudice and would have caused confusion regarding the plaintiffs' wrongful death claims." *Id.*

Similarly, because the inference that Defendant's employee's failure to follow internal rules or guidelines constitutes evidence of negligence is so weak, the probative value of Defendant's internal rules or guidelines does not outweigh the obvious substantial risk of unfair prejudice and confusion. We therefore grant Defendant's Motion *in Limine* No. 3, and we will bar Plaintiff from presenting any evidence or argument relating to any internal rules, guidelines, operating procedures, or requirements of Defendant.

### D.

**Defendant's Motion *in Limine* No. 4**. Pursuant to Federal Rule of Evidence 407, Defendant moves to bar Plaintiff from presenting any evidence or argument relating to any post-accident remedial measures undertaken by Defendant, or any post-accident reporting procedures that were or were not followed. Rule 407 states that evidence of subsequent measures "that would have made an earlier injury or harm less likely to occur" are not admissible to prove "negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction." Fed. R. Evid. 407. Rule 407 specifically provides that evidence of those measures may be admitted "for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of any precautionary measures." *Id.*

During discovery, Defendant produced documents relating to its internal policies and procedures pertaining to the investigation and reporting of accidents involving powered industrial trucks, including the truck involved in this occurrence. Defendant contends that whether its employees performed an investigation or prepared a report regarding the occurrence has no bearing on whether Defendant or its employee acted or failed to act in accordance with

any duties under Illinois law. Defendant also argues that the issues of ownership or control of the premises where the occurrence happened are not controverted, nor is there any dispute as to feasibility of any precautionary measures.

Plaintiff responds that if the issue of ownership and control of Defendant's truck and trailer remains undisputed, evidence of post-accident remedial measures and reporting will not be necessary. Plaintiff indicates that such evidence "may become necessary concerning statements made by Defendant's employee, Herbert Estrada, the operator of the truck and trailer" (doc. 168 at 1). Plaintiff has not cited any evidence showing that any statement by Mr. Estrada may bring ownership, control, or feasibility of precautionary measures into play. We therefore grant Defendant's Motion *in Limine* No. 4. However, in the event that Plaintiff contends Defendant has opened the door to admission of that evidence, Plaintiff must first approach the bench and obtain an advance ruling before offering evidence regarding post-accident remedial measures or reporting.

### E.

**Defendant's Motion *in Limine* No. 9**. Defendant moves to bar Plaintiff from testifying or presenting any evidence that he will need future medical care for his alleged injuries or that his alleged injuries and disability are permanent in nature. Defendant argues that testimony that Plaintiff's injuries are permanent in nature or will require future medical treatment would be inherently unreliable because it has been more than five years since Plaintiff received any medical or physical therapy treatment for his claimed injuries. Defendant objects to Plaintiff's treating orthopedic surgeon, Dr. Mukund Komanduri, offering testimony that Plaintiff currently experiences, pain, discomfort, loss of motion, or weakness in his shoulder or elbow. At his last physical examination by Dr. Komanduri on September 9, 2011, Plaintiff was found to be "doing

very well" with respect to his right elbow injury and his right shoulder was found to be "stable" such that Dr. Komanduri found that Plaintiff needed no further treatment and he had no permanent restrictions. Defendant says Plaintiff has not disclosed any change in his condition in the five-plus years since these findings.

Plaintiff objects only to a portion of Defendant's motion. Plaintiff disavows any intention to offer evidence regarding a need for future medical care. Likewise, Plaintiff does not seek to offer evidence as to permanent disability associated with Plaintiff's injuries in terms of an impairment rating or limitation on employability. Thus, Plaintiff does not object to the motion insofar as it seeks to bar that evidence. However, Plaintiff seeks to introduce testimony from Dr. Komanduri that Plaintiff has scarring, pain, and discomfort that would reasonably be expected to continue through today, even though future medical care is not sought or needed to address these conditions.

An "expert's opinion is only as valid as the bases and reasons for the opinion." *Soto v. Gaytan*, 728 N.E.2d 1126, 1132 (Ill. App. 2000). "A medical expert witness may not base his opinion on guess, conjecture, or speculation." *Id.* at 1133. In examining the reliability of opinion testimony from a treating physician concerning the permanency of a condition, Illinois courts consider the nature of the plaintiff's injury or condition, the type of treatment administered to the plaintiff, the length of time the plaintiff was receiving the treatment, the number and frequency of the plaintiff's visits, the length of time between the plaintiff's last treatment and the witness' formation of his or her opinion, the length of time between the formation of the opinion and the trial, and any other circumstances that bear on the relevance and reliability of the proposed testimony. *Decker v. Libell*, 737 N.E.2d 623, 625 (Ill. S.Ct. 2000). This list is not exhaustive, nor does it "constitute a five-part test in which the findings concerning each factor must support the

admissibility of the proposed opinion testimony." *Soto*, 728 N.E.2d. at 1134. There is also no "bright-line rule" considering only the number of months since the most recent examination and the time of trial. *Id.* at 1132. Rather, the trial judge should consider the totality of the circumstances in determining whether a medical treater's testimony concerning permanency is reliable. *Id.* at 1133; *see also Verbance v. Altman*, 754 N.E.2d 856, 864 (2001) (stating that "[a] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether a particular expert's testimony is reliable.").

Applying the relevant considerations to this case, we conclude that Dr. Komanduri's deposition testimony regarding permanency has sufficient indicia of reliability to be admissible. Plaintiff alleges that he sustained injuries to his right elbow and shoulder when he was struck by Defendant's vehicle on March 17, 2010. Plaintiff was referred to Dr. Komanduri for an independent orthopedic examination, and Dr. Komanduri was Plaintiff's treating orthopedic surgeon. Plaintiff's treatment with Dr. Komanduri lasted a year, beginning on September 10, 2010 and ending on September 9, 2011. During this period, Dr. Komanduri saw the Plaintiff at least twelve times, took x-rays and MRIs, ordered a couple of months of physical therapy, and performed two surgeries on Plaintiff's right elbow and one surgery on Plaintiff's right shoulder. During the course of his treatment, Plaintiff also saw Dr. Komanduri's assistant on at least one occasion. Dr. Komanduri's deposition was taken on November 1, 2013, a little more than two years after Plaintiff ceased his course of treatment with Dr. Komanduri. At his deposition, Dr. Komanduri testified that when he discharged Plaintiff from his care without any permanent restrictions, he did not anticipate that Plaintiff would need any future medical care for his conditions but "there are permanent factors or remnants of his injury that remain. . . . Scars, pain,

discomfort, loss of range of motion, . . . weakness. So those are reasonable things" (doc. # 155-1 at 85:21-86:2).

Trial is set for November 14, 2016, a little more than three years after Dr. Komanduri's deposition was taken, and a little more than five years after the last treatment occurred. The almost 26 month gap between Plaintiff's last medical exam and Dr. Komanduri's testimony must be balanced against the totality of the facts in this case, including that Dr. Komanduri is an orthopedic surgeon who treated Plaintiff for a year, examined Plaintiff at least twelve times, took x-rays and MRIs, prescribed physical therapy, performed three surgeries, and ultimately discharged Plaintiff from his care with a full release to return to work. Considering the totality of the circumstances, we find that Dr. Komanduri had a sufficient basis to form an opinion as to the permanency of scars, pain, discomfort, loss of range of motion, and weakness.

Defendant points to the *Freeland v. Arvin-Meritor, Inc.*, 2009 WL 586431 (S.D. Ill. March 6, 2009), case which held that it was not an abuse of discretion to refuse to allow jury instructions regarding permanency, future damages, and future loss of consortium where it had been "several years" before the trial since the plaintiff had last been examined and there was no evidence that the plaintiff had experience a substantial change in his condition between the date of his last exam and the date of the trial. In *Freeland*, "there was no reliable evidence regarding the permanency of any of Mr. Freeland's injuries," given that his three treating physicians testified that they did not believe he suffered from a traumatic brain injury, none of the medical examinations or tests showed any objective evidence of such an injury, and Mr. Freeland exhibited signs of malingering. *Id.* at *1, 3. The same is not true for Plaintiff in this case. Dr. Komanduri opined that Plaintiff suffers from permanent scars, pain, discomfort, loss of range of motion, and weakness and the MRIs showed objective evidence of injuries. Moreover, the

*Freeland* court's ruling was only that it did not abuse its discretion by disallowing the jury instructions regarding the permanency of Mr. Freeland's injuries. This ruling does not mean that it would have been an abuse of discretion to give the permanency instruction. Thus, *Freeland* is distinguishable and does not compel a finding that Dr. Komanduri's testimony should be excluded. It is for Defendant to challenge Dr. Komanduri's testimony through vigorous cross-examination; Defendant is not entitled to a technical knockout by barring that testimony altogether. For these reasons, Defendant's Motion *in Limine* No. 9 is denied.

F.

**Defendant's Motion *in Limine* No. 10**. Defendant seeks to bar Plaintiff from making a claim for lost wages (other than for the two days following the occurrence), or from introducing any evidence in any way tending to indicate that his employment was terminated or that he was unable to obtain subsequent employment as a result of his alleged injuries. Plaintiff returned to work on the Monday following the accident and continued to work for his employer, Fleetwash, for two weeks thereafter before being terminated for reasons having nothing to do with the accident or his alleged injuries. Defendant says that the record contains no testimony or evidence indicating that subsequent to Plaintiff's firing from Fleetwash he was unable to find employment due to his injuries. Plaintiff objects to barring his wage loss claim. Plaintiff points out that as part of the settlement of his worker's compensation claim, Plaintiff was deemed to be temporarily totally disabled from October 11, 2010 through May 26, 2011 and his employer paid benefits for being temporarily totally disabled during that period.

Plaintiff has cited no authority to show that temporary total disability benefits paid in a worker's compensation case settlement are relevant to a party's claimed wage loss in a corresponding tort action, and we have found none. We therefore agree with Defendant that

Plaintiff's employer's settlement of the worker's compensation case and payment of temporary total disability benefits from October 11, 2010 through May 26, 2011 is not a binding determination that Plaintiff incurred lost wages, especially against Defendant who was not a party to the worker's compensation case. Because the terms of the worker's compensation case settlement are irrelevant to the issues in this case, we grant Defendant's Motion *in Limine* No. 10 insofar as it seeks to bar evidence of the worker's compensation settlement.

However, on this record, we are unable to determine that Plaintiff should be barred from testifying that he was unable to obtain subsequent employment because of his injuries. Plaintiff provided an interrogatory answer stating that he was unable to work from the date of the incident (March 17, 2010) until he was released by his physician on May 26, 2011 and his lost earning are approximately $26,000. Plaintiff will have to answer for the evidence showing he returned to work shortly after the accident and was fired for unrelated reasons; but in light of the subsequent surgeries, we cannot say on a motion *in limine* that at all times after his return to Fleetwash he was able to work, or that any surgeries which may have precluded work were unrelated to the accident. Accordingly, we grant in part and defer in part Defendant's Motion *in Limine* No. 10.

### G.

**Defendant's Motion *in Limine* No. 11.** Defendant moves to bar Plaintiff, his attorneys, and any witnesses from making any statements, remarks, or arguments, or introducing any evidence relating to medical care not approved or allowed by Plaintiff's employer's workers' compensation insurance carrier or not obtained by Plaintiff due to lack of resources. Defendant says that Plaintiff has not provided any information or documents to indicate that he was denied additional care, or that additional care was recommended but he did not pursue that care because of his inability to pay for it. Defendant also states that the record is void of any evidence

18

indicating that Plaintiff has required or requested any medical or physical therapy treatment that he did not obtain or that was denied by his employer's workers' compensation carrier. Therefore, Defendant argues, Plaintiff should not be allowed to make such a claims at trial. Plaintiff does not object to barring evidence regarding Plaintiff's denial or lack of access to additional medical care following September 9, 2011. Plaintiff states, however, that if Defendant argues that the amount of time between Plaintiff's treatment with Jon Christofersen, M.D. and Mukund Komanduri, M.D. indicates that Plaintiff was not injured on March 17, 2010, such evidence will become relevant.

Plaintiff has not offered any evidence that he sought or requested medical care that was denied by his employer's worker's compensation carrier. Accordingly, we grant in part Defendant's Motion *in Limine* No. 11 to the extent that the Court will preclude Plaintiff from offering evidence that he sought or requested medical care that was denied by his employer's worker's compensation carrier. If Plaintiff contends that Defendant has opened the door to this issue, Plaintiff must first approach the bench and obtain an advance ruling before offering testimony or comment regarding denial of or lack of access to additional medical care not allowed by Plaintiff's employer's worker's compensation carrier. On the present record, we cannot exclude the possibility that Plaintiff would be allowed to testify that he did not seek additional medical care due to a lack of resources. We defer ruling on this part of Defendant's Motion *in Limine* No. 11 until trial.

### H.

**Defendant's Motion *in Limine* No. 13**. Defendant moves to prohibit Plaintiff, his counsel, and any witnesses called by Plaintiff from making any statements, remarks, or arguments, or introducing any testimony, exhibits, or other evidence relating to the workers'

compensation claim Plaintiff filed in relation to the accident giving rise to this case. Because worker's compensation payments are not based on the employer's negligence but rather on a statutory duty, Defendant argues that evidence regarding Plaintiff's workers' compensation claim should be excluded on relevancy and Rule 403 grounds.

Plaintiff agrees with Defendant's position regarding the relevance and prejudicial nature of evidence surrounding Plaintiff's worker's compensation claim, but seeks to present certain evidence if Defendant "distorts the medical care and treatment received by Plaintiff" (doc. 151 at 2). If Defendant argues that Plaintiff chose a physician that was not capable of diagnosing Plaintiff's orthopedic injuries or that the amount of time between Plaintiff's treatment with Dr. Christofersen and Dr. Komanduri indicates that Plaintiff was not injured on March 17, 2010, then Plaintiff seeks to argue that any delay was caused by the obstruction of his worker's compensation insurance carrier.

Again, Plaintiff has not offered any evidence that Plaintiff's treatment was delayed or denied because of obstruction by his employer's worker's compensation carrier. We therefore grant Defendant's Motion *in Limine* No. 13. If Plaintiff contends that Defendant has opened the door to this issue, Plaintiff must first approach the bench and obtain an advance ruling before offering testimony or comment that any delay in treatment was caused by the obstruction of the worker's compensation insurance carrier.

### I.

**Defendant's Motion *in Limine* No. 14.** Defendant moves to exclude from evidence certain medical bills, and to limit the bills Plaintiff incurred from Dreyer Medical Clinic, MK Orthopedics and Athletico Naperville North to the amounts of those bills paid. Defendant argues that Plaintiff is unable to offer any foundational testimony to support the introduction of certain

of the medical bills at issue, or the total amount of the medical bills of Dreyer Medical Clinic, MK Orthopedics and Athletico Naperville North as opposed to the amount of these bills that were paid. Like his response to Defendant's Motion *in Limine* No. 1, Plaintiff objects to Defendant's motion but offers no substantive response; instead Plaintiff states only that he intends to file a motion "seeking leave to provide a supplemental witness disclosure which would obviate Defendant's motion" (doc. 170). Again, no motion seeking leave to provide a supplemental witness disclosure has been filed.

Under Illinois law, "[i]n order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature." *Arthur v. Cantour*, 833 N.E.2d 847, 853 (Ill. S.Ct. 2005). "When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is *prima facie* reasonable." *Id.* "In a case in which the plaintiff seeks to admit a bill that has not been paid in whole or in part, he or she must establish reasonableness by other means--such as by introducing the testimony of someone having knowledge of the services rendered and the reasonable and customary charge for such services." *Wills*, 892 N.E.2d at 1025. Expert testimony is required to establish the reasonableness of unpaid medical bills. *Battle v. O'Shaughnessy*, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012).

Defendant's objections to admission of most of Plaintiff's medical and physical therapy bills are well-taken. Plaintiff named the "Keeper of Records" and "Patient Account Representative" of four entities "to provide factual and opinion testimony" that the medical bills from each entity "represent charges which were reasonable and necessary treatment for injuries

and medical conditions caused by the subject incident" and that "the amounts included in the medical bills of [the named entity] are fair and reasonable charges for the services performed" (doc. # 145 at Ex. D). As previously discussed in connection with Defendant's Motion *in Limine* No. 1, Plaintiff's listing of generic titles of "Keeper of Records" and "Patient Account Representative" in lieu of identifying by name specific individuals violates the requirements of Rule 26(a)–not to mention the order setting forth what the parties were required to include in the final pretrial order.

With respect to the bills for which Plaintiff identified expert witnesses to attempt to establish the reasonableness of the bills charged by the witness or his principal (Dreyer Medical Clinic, LLC – Dr. Jon Christofersen; MK Orthopedics – Dr. Mukund Komanduri; and Athletico Naperville North – Nathan Sels, PT), none of those entities' bills were paid in full. Because none of those bills have been paid in full, Illinois law requires that Plaintiff offer expert testimony that the total charges (and not just the portion paid) were reasonable for services of that nature. The deposition testimony presented in Defendant's motion shows that Dr. Christofersen and Dr. Komanduri lacked the ability to establish that the full amount of their medical bills are reasonable and necessary. Therefore, we grant Defendant's motion to exclude evidence concerning the unpaid portions of the MK Orthopedics and Dreyer Medical Clinic bills.

Plaintiff's physical therapist, Nathan Sels, of Athletico Naperville North has not been deposed, so it remains to be seen whether he possesses the requisite knowledge regarding whether the full amounts of Athletico Naperville North's bills are fair and reasonable. We defer ruling until trial on whether the entire amount of Athletico Naperville North's medical bills are admissible. For these reasons, Defendant's Motion *in Limine* No. 14 is granted in part and deferred in part. Our ruling on this motion applies equally to other medical bills which were not

paid or not paid in full. Unless Plaintiff has a witness properly identified who can offer competent testimony as to the necessity of the services and reasonableness of the charges, the Court will not allow those bills into evidence.

**J.**

**Defendant's Motion *in Limine* No. 15**. Based on Judge Martin's summary judgment opinion of July 9, 2015, Defendant moves for an order approving the use of non-pattern jury instructions stating that the moving truck and trailer at issue posed an open and obvious danger to Plaintiff and that Plaintiff failed to exercise due care for his own safety when he walked into the path of the moving truck and trailer. Defendant argues that the "issues" jury instruction should be fashioned to inform the jury of Judge Martin's determination that the danger posed by the moving truck and trailer was an open and obvious condition. Similarly, Defendant contends, the jury should be instructed that the Court has found that Plaintiff was negligent, that his negligence was a proximate cause of his alleged injuries, and that the jury need only decide the percentage of Plaintiff's negligence relative to that (if any) of Defendant. Plaintiff objects to Defendant's Motion *in Limine* No. 15, arguing that the open and obvious ruling only related to the premises liability count and as to the negligence count, Judge Martin did not determine that Plaintiff was negligent with regard to Defendant's employee's conduct in operating the truck and trailer.

In his opinion on summary judgment, Judge Martin determined that as to Plaintiff's premises liability claim, there was no genuine issue of fact concerning the open and obvious danger posed by the moving truck and trailer. Defendants therefore owed no duty to protect or warn Plaintiff of the moving truck and trail. Plaintiff also claims, however, that Defendant's employee's negligent operation of the truck and trailer caused Plaintiff to be injured. Judge

Martin found that genuine issues of material fact remained as to whether Defendant's employee negligently operated the truck and trailer.

We reject Defendant's request for instructions telling the jury that the moving truck and trailer posed an open and obvious danger and that Plaintiff failed to exercise care for his own safety. We find that these instructions, which in substance direct the jury that there was contributory negligence, would be improper for two reasons.

*First*, the open and obvious doctrine is a premise liability concept that is inapplicable to an ordinary negligence claim. A premises liability claim is based on the defendant's duty as an owner of land. The open and obvious danger doctrine is a limitation on the duty of care owed in the context of a duty to warn. In general, a party who owns or controls land is not required to foresee and protect against an injury if the allegedly dangerous condition is open and obvious. Here, Plaintiff alleged both premises liability and ordinary negligence. Plaintiff's remaining negligence claim is based on Defendant's employee's negligent operation of the truck and trailer. A traditional negligence analysis applies to Plaintiff's claim for negligent operation of the vehicle. Defendant's employee owed a duty to use due care and caution in the operation and control of the truck and trailer. The duty owed by the landowner is separate and distinct from the duty owed by Defendant's employee. Because the open and obvious danger of the moving vehicle is relevant only in analyzing the duty of the owner of the premises to warn and not in analyzing whether Defendant's employee breached a duty to use due care and caution in operating the vehicle, Judge Martin's finding that the moving vehicle posed an open and obvious danger for purposes of premises liability is not relevant to Plaintiff's claim for negligent operation of the vehicle.

24

*Second*, Judge Martin did not determine for purposes of trial on Plaintiff's negligence claim that Plaintiff was contributorily negligent. In arguing that the Court should instruct the jury that Plaintiff failed to exercise due care for his own safety, Defendant points to Judge Martin's statement that Plaintiff "failed to exercise due care for his own safety when walking directly into the path of the moving truck and trailer" (doc. # 105 at 12). But Judge Martin's statement must be considered in the context of his opinion as a whole. Judge Martin's statement, when considered in context, is not a determination that is binding on the parties at trial on his claim for negligent operation of the vehicle. Judge Martin's statement was made when considering Plaintiff's premises liability claim and the issue of whether the danger posed by the moving truck and trailer was open and obvious, negating any potential duty on Defendants part to warn Plaintiff. After determining that the danger of the moving truck and trailer was open and obvious, Judge Martin's stated that the law presumes that persons who encounter obviously dangerous conditions will take care to avoid the danger. Defendants thus could have reasonably expected Plaintiff to appreciate the risk associated with walking into the path of the backing up truck and trial.

However, Judge Martin also explicitly stated in his opinion that on the premises liability claim, he was not addressing the issues of proximate cause and Plaintiff's contributory negligence because Plaintiff had failed to raise a genuine issue of material of fact as to whether Defendants owed him a duty to warn (doc. # 105 at 14). Considering the complete record, we conclude that Judge Martin's statement regarding Plaintiff's failure to exercise due care in granting summary judgment on Plaintiff's premises liability claim was not intended to be binding on the parties at trial of the negligence claim that survived summary judgment. Had he intended otherwise, Judge Martin could have entered an order deeming certain facts established

in the case pursuant to Federal Rule of Civil Procedure 56(g). Defendant did not request and Judge Martin did not enter any such order establishing any facts for trial, leaving the issue of Plaintiff's contributory negligence as a question for the jury on his claim for negligent operation of the vehicle. Defendant's Motion *in Limine* No. 15 is therefore denied.

## CONCLUSION

Accordingly, for the reasons stated above, our rulings on Plaintiff's Motions *in Limine* (doc. # 147) are as follows: (a) Plaintiff's Motions *in Limine* Nos. 2-8, 10 and 13-17 are granted without opposition; (b) Plaintiff's Motions *in Limine* Nos 1 and 9 are granted over defendant's objection; (c) we defer ruling on Plaintiff's Motion *in Limine* No. 11 for trial; and (d) we grant in part and deny in part Plaintiff's Motion *in Limine* No. 12. Our rulings on Defendant's Motions *in limine* (doc. ## 132-146) are as follows: (a) Defendant's Motions *in Limine* Nos. 5-8 and 12 are granted without opposition; (b) Defendant's Motions *in Limine* Nos. 1-4 and 13 are granted over plaintiff's objection; (c) Defendant's Motions *in Limine* Nos. 10-11 and 14 are granted in part and deferred in part for ruling at trial; and (d) Defendant's Motions *in Limine* Nos. 9 and 15 are denied.

**ALL COUNSEL ARE RESPONSIBLE FOR ADVISING THEIR WITNESSES OF THE RULINGS ON THE MOTIONS *IN LIMINE*, AND TO TAKE ALL REASONABLE STEPS TO ENSURE THAT THE WITNESSES DO NOT OFFER TESTIMONY OR COMMENT ON ANY MATTERS BARRED BY THESE RULINGS.**

**IN THE EVENT ONE SIDE CONTENDS THAT THE OTHER SIDE HAS OPENED THE DOOR TO INQUIRY INTO MATTERS BARRED BY THESE RULINGS, THE SIDE MAKING THAT CONTENTION SHALL SEEK A SIDEBAR AND OBTAIN**

ADVANCE APPROVAL OF THE COURT BEFORE ASKING ANY QUESTIONS OR
MAKING ANY ARGUMENT ON MATTERS BARRED BY THOSE RULINGS.

E N T E R:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATE:  October 20, 2016